**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,** | ) | |
| **Plaintiffs-Counterdefendants** | ) | **No. 05-956 T** |
| **vs.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiffs.** | ) | |

| | | |
|---|---|---|
| **ROBERT B. DEINER and MICHELLE S. DEINER,** | ) | |
| **Plaintiffs-Counterdefendants** | ) | **No. 05-971 T** |
| **vs.** | ) | **(Judge Christine O. C. Miller)** |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiff.** | ) | |

**DEFENDANT THE UNITED STATES' MOTION**
**TO STRIKE PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

Defendant-Counterplaintiff, the United States, moves this Court to strike the motions for summary judgment recently filed by Plaintiffs-Counterdefendants David and Malia Litman and Robert and Michelle Deiner (collectively, "Plaintiffs"). In support, the United States states as follows:

## Background

1. As this Court is aware, the Litman's Complaint for refund of income taxes was filed on August 30, 2005, and the Dieners' Complaint for refund of income taxes was filed on

September 7, 2005. (The complaints are virtually identical.) The United States filed its answers and counterclaims for interest on November 1st and November 7th, respectively. Surprisingly, on the same day they filed their reply to the counterclaim, November 14th, the Litmans filed a motion for summary judgment. The Deiners filed an identical motion, just one week later, on November 21st. In its Order of November 22, 2005, this Court consolidated these cases and ordered Plaintiffs to consolidate their motions and refile them by December 5, 2005.

2. In brief, these cases concern a dispute about the fair market value of approximately 10 million shares of restricted stock received by a liquidating trust, of which Plaintiffs were co-grantors, in exchange for the sale of the assets of a Subchapter S corporation (TMF, Inc.) jointly owned by Plaintiffs. Other disputes concern whether an employee compensation deduction is allowable and whether Plaintiffs are liable for a 20% penalty for underpayment of income tax. The capital gain on the receipt of the stock and the compensation deduction passed-through the trust and were taxed to and deducted by Plaintiffs. After receiving notices of deficiencies in which the IRS disallowed the compensation deduction and asserted the stock had a value greater than that declared by Plaintiffs in their returns, the Litman's paid approximately $12.5 million in additional tax and $2.5 million in penalties and the Deiners paid approximately $12.6 million in additional tax and $2.5 million in penalties.

3. Because the initial pleadings have just been completed, the parties have not yet made disclosures pursuant to Rule 26 of the Rules of the United States Court of Federal Claims ("RCFC") or completed any other discovery. On November 21, 2005, however, counsel for the parties held a teleconference pursuant to RCFC Appendix A, ¶ 3, and discussed a discovery plan, including anticipated deposition witnesses and fact and expert discovery deadlines, and

preparation of a joint preliminary status report. The parties intend to file a joint status report, with a proposed discovery schedule, by December 23, 2005, the current deadline. The parties expect to propose a schedule under which all discovery would be completed by November 30, 2006.[1] The parties also have now begun discovery: on November 25, 2005, the United States received Plaintiffs' First Requests for Admissions (99 in total). The United States intends to serve discovery shortly.

**Plaintiffs' Summary Judgment Motions Should be Stricken**

4. Despite acknowledging the necessity of discovery in this case, Plaintiffs' motions seek summary judgment on all of the substantive and factual issues presented in their Complaints: the fair market value of the restricted stock, the deductibility of the employee compensation and their liability for penalties. These motions are so premature and unhelpful to the orderly progress of these cases that they should be stricken. Indeed, it is difficult to conceive why Plaintiffs thought summary judgment motions were appropriate at this time. The central issue - the value of the restricted stock - is obviously factual. Barring a settlement, it is highly unlikely that this issue will be resolved short of a trial where each sides' valuation experts testify. While it is possible that discovery may show that some collateral issues are undisputed, Plaintiffs could not have a good faith belief that the fair market value of the stock is undisputed. To the contrary, they are well aware that both the IRS and Hotel Reservations Network, Inc.("HRN"), the corporation that issued the restricted stock to their trust, disagree with their valuation. The IRS valued the stock at $16 per share in its notices of deficiency, as did HRN in its 2000 tax

---

[1] Counsel for the United States informed Plaintiffs' counsel of his intention to file this motion during the teleconference.

return. Plaintiffs used a value of $4.54 in their 2000 tax returns.[2] (Notice of Deficiency, attached to Complaint as Exhibit 1 to Exhibit A, p. 11).

5. As they must, therefore, Plaintiffs concede in their motions that the value of the restricted stock is a question of fact and that its value is not undisputed. For example, they discuss the many factors that may impact fair market value (*e.g.*, duration of restrictions, size of the block of stock subject to restrictions, volatility of the stock price, comparable stock prices and volatility). Plaintiffs also acknowledge that the United States intends to have an expert examine these factors and provide an opinion of the stock's fair market value. (Motions for Summary Judgment, pp. 12 - 15).[3]

6. The specific judgments Plaintiffs ask this Court to enter, however, most clearly demonstrate why their motions should be stricken. They first ask the Court to enter judgments finding that the approximately 10 million shares of stock had a fair market value of $45,437,822.00 in February 2000 (based on a value of $4.54 per share). (Motions for Summary Judgment, p. 24). Obviously, the court can not, at this time, enter judgment that that is the fair market value of the stock. Summary judgment may be entered only if there is no dispute of material fact and the movant is entitled to judgment as a matter of law, and it must be refused

---

[2] Mr. Litman was Chief Executive Officer and Mr. Deiner was President and Treasurer of HRN in 2000. Nevertheless, they and HRN used different values for the restricted stock in their respective tax returns. Obviously, this created a "whipsaw" problem for the United States. Plaintiffs used the value of $4.54 for determining their capital gains on receipt of the stock and HRN used the value of $16 per share in its 2000 return for determining amortization of the assets it received in exchange.

[3] Plaintiffs' pending 99 requests to admit also confirm that there is not, at this juncture, an undisputed factual record that would support motions for summary judgment. Indeed, the service of those requests in advance of any discovery, and before defendant has obtained the opinion of an expert for trial, is similarly unhelpful to the efficient disposition of these cases.

when the nonmoving party has not had the opportunity to discover information needed for its opposition. *See,* RCFC 56(c) and *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 fn. 5 (1986). Here, the United States disputes Plaintiffs' claimed valuation and has not yet had an opportunity to obtain discovery in this case.

7. Recognizing this problem, Plaintiffs attempt to sidestep it by asking, in the alternative, that this Court declare that the stock was worth something "less than $16 per share," without deciding what that value is, and that they will be entitled to a refund in some unspecified amount once that value is determined. (Motions for Summary Judgment, pp. 15, 24). This Court also can not and should not enter such an indeterminate and hypothetical judgment at this time, or, for that matter, at any time. Summary judgment is appropriate only if the Court can conclusively decide, upon undisputed facts, what the stock was worth. Additionally, an advisory and provisional ruling now that the stock is worth something "less than $16 per share" does not advance these cases at all - the Court will still have to decide the precise value of the stock at trial, when it will have the benefit of a complete record.

8. Moreover, the Court cannot prejudge the issue and predict, before discovery has begun, whether the fair market value of the stock will be less than, equal to, or above $16 per share. *See e.g., Okerlund v. United States*, 53 Fed.Cl. 341, 345 (The court relies on expert testimony regarding the fair market value of stock but may accept the experts' opinions in whole or in part or reject the opinions altogether and determine the value on its own after examining the evidence in the record.) The United States does not agree that the fair market value of the stock is less than $16 per share and it is entitled to discovery and the services of an expert to help the Court resolve the issue.

9. Finally, even if the Court could somehow make a judgment now about the stock's value relative to a $16 benchmark, it can not predict whether Plaintiffs will be entitled to refunds. The fair market value of the stock alone will not determine that issue. It also will depend on the underpayment of tax due to the disallowances of the compensation deductions, the United States' counterclaims for interest and any other possible offsets. In light of all these disputed facts and the limitations of the record at this point, Plaintiffs' alternative motion regarding valuation is, essentially, a request that this Court enter an order providing that "if Plaintiffs are entitled to a refund, they will receive refund." The Court should not entertain such a request and should strike the motions.

10. Plaintiffs motions also are premature because they are based on a misunderstanding of the nature of refund proceedings in this Court. The income taxes at issue have been assessed and paid. It is Plaintiffs burden, therefore, to come forward with evidence as to why they should receive a refund. *See,* 26 U.S.C. §7491; and *Cook v. United States*, 46 Fed.Cl. 110 (2000). Merely objecting to the IRS' determinations and claiming that they were erroneous, however, does not provide a basis for the immediate entry of summary judgment. "In tax refund suits, factual issues are tried *de novo* in this court[.]" *Cook, supra,* at 113. Accordingly, the United States may defend a refund suit and tax assessment "based on any admissible evidence, including that first disclosed in discovery, and conversely, need not rely solely, or at all, on the evidence reviewed administratively by the Service." *Cook, supra* at 113, 115. At this point, Plaintiffs and the Court cannot prejudge what the evidence will be in this case.

11. The other issues on which Plaintiffs move for summary judgment are also distinctly factual and unsusceptible to summary judgment now. Whether employee compensation is deductible under 26 U.S.C. §162 is a question dependant on its reasonableness, substantiation and many other factual inquiries, as Plaintiffs admit in their motions. (Motions for Summary Judgment, p. 15 - 18). *See*, Treas. Reg. §§1.162-7, 1.162-9. Additionally, Plaintiffs' base their challenge to the penalty assessed against them on a claim that they had "reasonable cause" and acted in "good faith" in valuing the restricted stock for their 2000 tax return. *See*, 26 U.S.C. §6664(c). It is difficult to imagine a more factual inquiry. As the applicable regulation provides, reasonable cause and good faith must be determined "on a case-by-case basis, taking into account all pertinent facts and circumstances." Treas. Reg. §1.6664-4(b)(1). The regulations also rebut Plaintiffs argument that their reliance on an appraisal conclusively ends the factual inquiry: "[r]easonable cause and good faith ordinarily is not indicated by the mere fact that there is an appraisal of the value of property." Treas. Reg. §1.6664-4(b)(1).

12. Of course, if the record eventually developed in these cases shows that some issues are undisputed, Plaintiffs would be free to file motions for summary judgment at that time. Their current motions, however, are premature and will not help advance the resolution of these cases. They should be stricken.

**Alternatively, the Court**
**<u>Should Order a Continuance</u>**

13. Alternatively, if this Court does not strike the motions for summary judgment, it should, pursuant to RCFC 56(f), order a continuance and revise the deadlines for the United States' response to the motions. (Pursuant to the November 22nd Order, the United States' response deadline is currently scheduled to "run from December 5, 2005," the date by which

Plaintiffs are to file consolidated motions.) Obviously, the United States needs to conduct substantial discovery and has not yet had an opportunity to complete it. As noted above, however, counsel for the parties have already discussed the anticipated discovery, agreed to a proposed discovery schedule (concluding by November 30, 2006) and begun serving discovery. On behalf of the United States, the discovery will include requests for documents (from Plaintiffs, HRN, Plaintiffs' expert and other third parties), interrogatories and depositions (of Plaintiffs, their expert and other third parties). The United States also will retain its own experts. At a minimum, the United States will have an expert opine on the value of the restricted stock. (Plaintiffs submitted an expert's report with their motions for summary judgment.) Accordingly, the Court should order a continuance of Plaintiffs' motions and, after sufficient time for this discovery, set a response date for the consolidated motions or allow Plaintiffs to file amended motions (or withdraw the motions) in light of the intervening discovery.

WHEREFORE, the United States prays that this Court: (i) strike the motions for summary judgment filed by Plaintiffs and vacate the order requiring consolidated motions by December 5, 2005; or (ii) order a continuance of Plaintiffs' motions and vacate the deadline currently set for the United States' response.

Respectfully submitted,

s/ Cory A. Johnson
Cory A. Johnson
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington D.C. 20044
202-307-3046

Eileen J. O'Connor
Assistant Attorney General
David Gustafson
Acting Chief, Court of Federal Claims Section
Steven I. Frahm
Assistant Chief, Court of Federal Claims Section

s/ Steven I. Frahm
Of Counsel

Dated: November 29, 2005