**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN** | ) | |
| **Plaintiffs-Counterdefendants,** | ) | |
| **V.** | ) | **No. 05-956T** |
| **THE UNITED STATES** | ) | |
| **Defendant-Counterplaintiff.** | ) | |
| **ROBERT B. DIENER and MICHELLE S. DIENER,** | ) | |
| **Plaintiffs-Counterdefendants,** | ) | |
| **V.** | ) | **No. 05-971T** |
| | ) | **(Judge Christine O.C. Miller)** |
| **THE UNITED STATES** | ) | |
| **Defendant-Counterplaintiff.** | ) | |

**PLAINTIFFS' RESPONSE TO THE UNITED STATES' MOTION TO STRIKE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs-Counterdefendants David S. and Malia A. Litman ("the Litmans") and Robert B. and Michelle S. Diener ("the Dieners") (collectively, "Plaintiffs") file this response to the Motion to Strike filed by Defendant-Counterplaintiff, the United States ("Defendant").

**A. The Litmans and the Dieners are Entitled to Have Their Summary Judgment Motion Heard.**

1. This case involves an abuse of process by the Internal Revenue Service ("IRS"). Over thirteen months ago, the IRS issued notices of deficiency to the Litmans and the Dieners assessing $30 million of tax and penalties based on an IRS valuation position the IRS knew was wrong. The IRS took the position in the notices of deficiency that the value of shares of stock subject to onerous sale restrictions were equal in value to freely traded unrestricted

shares. The IRS's valuation position was not supported by any expert valuation opinion and was contrary to both the IRS's published Revenue Rulings and the stated position of its Examining Agent. Adding insult to injury, the IRS's notices of deficiency included $5 million of penalties regarding the reported value of the Restricted Shares, despite the fact that the Litmans and the Dieners relied on the opinion of a respected appraiser often relied upon by the IRS in valuation matters to value the Restricted Shares.

2. The erroneous notices of deficiency issued have forced the Litmans and the Dieners to pay the same tax twice. Plaintiffs first paid capital gains tax on the initial receipt of the Restricted Shares in 2000. As the sale restrictions expired during the next four years, Plaintiffs sold the shares and paid capital gains tax based upon the difference between the sales price and their tax basis (the fair market value of the shares when received in 2000). The IRS's notices of deficiency for 2000 forced the Litmans and the Dieners to pay an additional $25 million of tax – which they had effectively paid in prior years as the Restricted Shares were sold – plus a $5 million substantial undervaluation penalty.

3. Plaintiffs' timely filed motion[1] for summary judgment is the first opportunity for the Litmans and the Dieners to seek redress for the injustice committed against them by the IRS. Now, in the face of that summary judgment motion, Defendant requests that Plaintiffs' motion be stricken as "premature" or "unhelpful," or alternatively to continue the motion to allow Defendant the opportunity to develop contraverting evidence.[2] Defendant

---

[1] Under the Court's November 22, 2005, Order and the Notice filed by Plaintiffs on December 2, 2005, the motion for summary judgment filed by the Litmans and the motion for summary judgment filed by the Dieners are being heard together, or, in the alternative, the Litmans' motion is being treated as controlling over common issues of fact and law addressed in the Dieners' motion. Accordingly, references to Plaintiffs' "motion" are to both motions, unless otherwise indicated.

[2] Rule 10(f) provides, in pertinent part, that "upon motion made by a party before

recognizes that unless it can proffer an expert opinion to controvert the summary judgment evidence submitted, Plaintiffs will be entitled to summary judgment as a matter of law on the valuation issue.

4. It has been four years since the Litmans and the Dieners filed their 2000 Federal Income Tax Returns (the "2000 Forms 1040"). During that time, Defendant has found no evidence to create even a fact issue with respect to the claims raised by the IRS in the notices of deficiency. During the last four years, Defendant knew or should have known that expert opinion testimony would be necessary to challenge the reported fair market value of the Restricted Shares. These points in time include:

- **October, 2001 -- Four years ago** -- TMF Liquidating Trust, the Litmans and the Dieners filed their Federal Income Tax Returns and the Litmans and Dieners paid tax on the gain recognized from the TMF Liquidating Trust receipt of the Restricted Shares.

- **During 2002, 2003, and 2004** -- TMF Liquidating Trust, the Litmans and the Dieners filed their Federal Income Tax Returns and the Litmans and the Dieners paid additional capital gains tax on the sale of the Restricted Stock, which occurred only after the sale restrictions lapsed.

- **April, 2004 -- Twenty months ago** -- IRS began its audit.

- **June, 2004 -- Eighteen months ago** -- The BVS report was given to the I.R.S.

- **June, 2004 -- Eighteen months ago** -- The attorney for the Litmans and the Dieners met with the IRS and offered to provide any additional information that the IRS might need for their own expert analysis.

- **September, 2004 -- Fifteen months ago** -- IRS acknowledged that "it is well settled that restrictions on the sale of stock

---

responding to a pleading . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." RCFC 10(f). Plaintiffs' Motion is neither redundant, immaterial, impertinent, nor scandalous.

reduced the stock's fair market value. . . (and) since the HRN stock was unregistered and subject to the resale restrictions of SEC Rule 144, this restriction limited the sale in the public market place and would generally justify a discount."

- **October, 2004 -- Fourteen months ago** -- IRS issued $30 million notices of deficiency including $5 million of penalties, asserting an accuracy related penalty, but had not itself obtained any expert valuation of the Restricted Stock.

- **January, 2005 -- Eleven months ago** -- The Litmans and the Dieners paid the alleged deficiency amount, over $30 million.

- **February, 2005 -- Ten months ago** -- The Litmans and the Dieners filed claims for refund.

- **August/September, 2005 -- Four months ago** -- The Litmans and the Dieners filed their Complaint in this case.

- **November 1 and 7, 2005 -- Two months ago** -- Defendant filed its answers.

- **November 14 and 21, 2005** -- The Litmans and the Dieners filed their motions for summary judgment.

- **January 5, 2006** -- The new response date currently set by the Court, sixteen months after the IRS admitted that a discount was justified.

5. Defendant should not be allowed to issue a notice of deficiency out of thin air, unsupported by any evidentiary basis, and then be allowed additional time to attempt to establish a foundation for its case when a timely filed motion for summary judgment requires it to lay its evidentiary cards on the table. Defendant's four year failure to produce any evidence supporting its notice of deficiency position, particularly an expert opinion regarding valuation, should not be considered a satisfactory ground for denying Plaintiffs' right to have their summary judgment motion heard.

**B. Defendant has Failed, for Over Four Years, to Obtain Any Expert Opinion or Any Evidence Creating a Fact Issue.**

6. Defendant's $30 million deficiency is comprised of three issues. The first issue is whether the fair market value of the Restricted Shares received by the TMF Liquidating Trust was $45,437,822 rather than the $160 million value asserted by the IRS. The second issue is whether the TMF Liquidating Trust was entitled to a deduction, under § 162(a)(1), for compensation paid to Andrew Pells, TMF's key employee. The third issue is whether the IRS erred in asserting a $2.5 million "accuracy-related" penalty under § 6662 when the evidence conclusively demonstrates that (1) no underpayment of tax occurred and (2) Plaintiffs reasonably relied upon two independent appraisals from qualified and reputable appraisal firms in reporting the fair market value of the restricted HRN shares received.[3] Plaintiffs' motion for summary judgment addresses all three of these issues.

7. Defendant has known for the last four years that the Court would require expert testimony with respect to any challenge to Plaintiffs' valuation of the Restricted Shares. In October 2001, Plaintiffs filed their Forms 1040, United States Individual Income Tax Return, for calendar year 2000 (the "2000 Forms 1040"). In the 2000 Forms 1040, Plaintiffs reported the capital gain recognized from TMF Liquidating Trust's receipt of the Restricted Shares and the loss relating to the Andrew Pells compensation. As the restrictions expired during 2001 through 2004, Plaintiffs sold the Restricted Shares. As the Restricted Shares were sold, Plaintiffs reported and paid additional capital gains tax based upon the difference between their tax basis (the fair market value of the Restricted Shares when received in 2000) and the subsequent sales price.

---

[3] Plaintiffs also assert that the IRS's deficiency and penalty is barred because the IRS failed to send a notice of deficiency to their last known address within the three year statute of limitations as required by § 6501(a).

8. On April 6, 2004, two and a half years after Plaintiffs filed their 2000 Forms 1040 and within months of the expiration of the statute of limitations, the IRS began its audit. Plaintiffs promptly provided all information sought by the Examining Agent and met with the Examining Agent to discuss the issues. The only issue raised by the Examining Agent during the audit involved the fair market value of the Restricted Shares. The Examining Agent never questioned nor sought any information regarding the Andrew Pells compensation issue. Included in the information provided to the Examining Agent was the appraisal of the Restricted Shares primarily relied upon by Plaintiffs to report the fair market value of the Restricted Shares received. That appraisal was prepared by Business Valuation Services, Inc. ("BVS"), an appraisal firm often relied on by Defendant with respect to valuation disputes.

9. On October 8, 2004, the IRS mailed notices of deficiency for the tax year ended December 31, 2000, asserting a deficiency against each of the Litmans and the Dieners in the amount of approximately $15 million (based on an income tax assessment of approximately $12.5 million, and a penalty of approximately $2.5 million). At the time it issued its notices of deficiency, the IRS was well aware that the onerous sale restrictions on the Restricted Stock substantially reduced the value of the stock received by the TMF Liquidating Trust (when compared to the freely traded value of the stock). Those onerous restrictions included, among other things (1) contractual holding periods (the majority of the Restricted Shares were subject to a four year restriction on sale), (2) SEC Rule 144 volume restrictions on the number of Restricted Shares that could be sold after holding periods expired, (3) the requirement that approval of HRN's parent company be obtained before any Restricted Shares could be sold, (4) the practical market restriction on sale due to the fact that TMF Liquidating Trust was owned by the CEO and President of HRN (any sale might be considered to be a lack of confidence in

the company), and (5) the public float was initially only half the size of the Restricted Shares issued to TMF Liquidating Trust, so practically the Restricted Shares could not be sold without drastically lowering the market price.

10. In her Revenue Agent's Report[4] prepared before the notices of deficiency were issued, the Examining Agent acknowledged the valuation impact of the erroneous sale restrictions as follows:

> It is well settled that restrictions on the sale of stock reduce the stock's fair market value . . . [and] since the HRN stock was unregistered and subject to the resale restrictions of SEC Rule 144, this restriction limited this sale in the public marketplace and would generally justify a discount.

Exhibit A. The IRS failed to obtain any independent expert opinion of the value of the Restricted Shares before issuing the notices of deficiency. Ignoring the substantial valuation impact of the sale restrictions and ignoring what the IRS recognized as "well-settled law," the IRS erroneously based both its $12.5 million tax deficiency and its $2.5 million penalty on the assumption that the stock received by the TMF Liquidating Trust was worth $16 per share -- the freely traded IPO price. Ironically, the IRS assessed a penalty against the Litmans and the Dieners concerning the valuation of the Restricted Shares (who reported the value of the shares consistent with the opinion of a respected appraiser) when the valuation position of the IRS was unsupported by any expert opinion and contrary to the "well settled" principal that the transfer restrictions reduce the value of the shares below $16. Moreover, the IRS then imposed a penalty, again without an expert valuation of any kind, which was calculated as a percentage of the additional tax assessed by the IRS -- an assessment the IRS knew was wrong.

---

[4] A copy of the Revenue Agent's Report for the Litmans is attached hereto as Exhibit A. The Revenue Agent's Report for the Dieners contains substantially identical language.

11. Plaintiffs paid the tax and penalty assessed under protest, and promptly filed claims for refund in February, 2005. As noted above, this essentially resulted in Plaintiffs paying tax on the same "gains" twice.

12. During the six months after Plaintiffs filed their claims for refund, Defendant took no action on the claims for refund. During that time, it is evident that Defendant never sought an expert valuation opinion to support its erroneous and extreme valuation position taken in the notices of deficiency.

13. The Litmans filed their Complaint on August 30, 2005. The Dieners filed their Complaint on September 7, 2005. In the three months since Plaintiffs filed this suit, Defendant has still not obtained an expert valuation opinion to support its erroneous position.

**C. Plaintiffs Motion for Summary Judgment is Timely. Defendants' Four Year Failure to Obtain An Expert Opinion or to Raise a Fact Issue is No Basis to Strike or Continue the Motion.**

14. Rule 56 permits a party "at any time after the expiration of 60 days from the commencement of the action in this Court" to move with or without supporting affidavits for a summary judgment. RCFC 56(a). The Litmans filed their motion for summary judgment on November 14, 2005. The Dieners filed their motion for summary judgment on November 21, 2005. The Court consolidated the cases on November 22, 2005. Both motions were filed more than 60 days after the commencement of this action, and are not premature. RCFC 2.56.

15. Plaintiffs' summary judgment evidence demonstrates the fair market value of the Restricted Shares (and the valuation impact resulting from undisputed contractual restrictions and SEC Rule 144 restrictions on trading), the facts supporting the deductibility of the Andrew Pells compensation under I.R.C. § 162 (based upon the services Mr. Pell provided to TMF, Inc. and TMF Liquidating Trust), and Plaintiffs' good faith reliance on the BVS appraisal (which cannot be disputed).

16. Because Defendant has no admissible evidence to establish a genuine issue of material fact, Defendant seeks to delay the Court's consideration of Plaintiffs' Motion. Until December 7, 2005, Defendant had not served a single discovery request in this case. Defendant's motion also fails to identify any specific discovery needed or any fact that Defendant requires discovery to ascertain that is not already in Defendant's knowledge or possession. For example, all of the contractual restrictions imposed on the Restricted Stock are set forth in the contract produced to Examining Agent during the audit. The Rule 144 restrictions imposed on the Restricted Shares are set by the SEC regulations. Likewise, Defendant does not dispute that Andrew Pells was a key employee of TMF, Inc. from inception, that the compensation was paid to him, or that Mr. Pells reported and paid ordinary income tax on the compensation. Thus, the only evidence Defendant's motion specifically states that it needs is an expert opinion regarding the value of the Restricted Shares. But Defendant's motion fails to state how long it would take to secure such an expert, or the fact that the expert would simply be analyzing the valuation effect of information that the Litmans and the Dieners produced to the IRS over a year and a half ago.[5]

17. This case is ripe for determination. Plaintiffs' Motion is the first opportunity for the Litmans and the Dieners to obtain relief from the injustice committed against them by Defendant. Defendant should not be permitted to issue extreme, unsupported, and indefensible notices of deficiency, assessing $30 million of tax and penalties, and then be heard to plead for more time to locate evidence to create a fact issue in response to Plaintiffs' request for a summary determination on the merits. It is Defendant's motion to strike that is "unhelpful" to the Court, not Plaintiffs' Motion.

---

5 A copy of the taxpayers representative's letter to Susan Weiss enclosing the BVS report is attached hereto as Exhibit B.

18. Defendant argues that because Plaintiffs bear the burden of proof in a refund suit, Defendant is entitled to engage in discovery to determine whether some basis exists to deny the refund.[6] During the four years since the Plaintiffs filed their 2000 Forms 1040 and the year and a half since Defendant initiated its audit, Defendant has failed to secure the opinion of an independent expert to support a valuation position that even Defendant's Examining Agent recognizes as incorrect. *See* Exhibit A. Either Defendant has been dilatory in seeking this expert opinion, Defendant has been unable to find an expert to support its erroneous position, or Defendant has simply refused to obtain an expert. Regardless, Defendant was provided with the BVS Report seventeen months ago. Plaintiff's position regarding the valuation of the Restricted Shares and their reliance on the BVS appraisal has been well known to Defendant. Plaintiff should not be penalized by having to expend additional fees and expenses to engage in protracted discovery so Defendant can attempt to raise a "fact issue" when Defendant has, in the almost two years since its audit began, failed to secure any admissible evidence supporting its position.

19. While a plaintiff in a refund suit generally bears the burden of proving his right to recover, the general rule does not apply where the IRS's initial assessment of tax is "without rational foundation and excessive." *United States v. Janis*, 428 U.S. 433, 441 (1975). "Proof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous." *Id.* at 443. As a matter of policy, the IRS must have some evidentiary foundation

---

[6] Defendant erroneously asserts that the position apparently taken by HRN, a publicly traded company controlled by USA Network, regarding the value of the Restricted Shares in its 2000 income tax return formed a proper basis for its notice of deficiency position regarding the value of the Restricted Shares. First, HRN's reporting position on value is not evidence of value and is not binding on either the Litmans or the Dieners. *See* Treas. Reg. § 1.170A-13(c). Second, HRN's corporate income tax return (which Defendant refused to provide to the Litmans and the Dieners in response to a Freedom of Information Act Request) constitutes confidential taxpayer information and cannot be introduced in this proceeding. *See* I.R.C. § 6103. Third, there is no requirement in the Internal Revenue Code that Plaintiffs and HRN agree to the value of the Restricted Shares.

before it can issue a notice of deficiency, particularly a notice that asserts a multi-million dollar tax deficiency and negligence penalty. Defendant's request for more time to find an expert to support its valuation position and to secure evidence to create a fact issue demonstrates that the IRS's assessment of $30 million of tax and penalty was "utterly without foundation" and "arbitrary" and "erroneous." In *Cook v. United States*, 46 Fed. Cl. 110 (2000) (a case relied upon the Defendant in support of its motion to strike), this Court noted that

> The tax collector's presumption of correctness has a Herculean masculinity of Goliath-like reach, but we strike an Achilles heel when we find no muscles, no tendons, no ligaments of fact.

*Id.* at 114, citing *Carson v. United States*, 560 F.2d 693, 696 (5th Cir. 1977). Numerous courts have noted that the presumption of correctness does not exist if the IRS cannot present some predicate evidence supporting its determination. *See, e.g.*, *Portillo v. Comm'r.*, 932 F.2d 1128 (5th Cir. 1991); *Carson v. United States*, 560 F.2d 693, 695-96 (5th Cir. 1997); *Anastasato v. Comm'r.*, 794 F.2d 884, 887 (3d Cir. 1986).

20. The Revenue Agent's Report demonstrates that "no ligaments of fact" exist with respect to Defendant's position that the Restricted Shares have a fair market value of $16 per share. *See* Exhibit A. Defendant's denial of the Andrew Pells compensation deduction was likewise without foundation. Defendant is not entitled to spend the next year engaged in protracted discovery, forcing the Litmans and the Dieners to incur additional attorney's fees and to forego the use of the $30 million paid to the IRS in response to notices of deficiency that have no evidentiary foundation. Plaintiffs are entitled to a refund of the $30 million of tax and penalty improperly assessed by Defendant. Defendant's motion to strike is nothing more than an attempt to deny Plaintiffs access to relief to which they are entitled – a summary determination of the issues in this case. It should therefore be denied.

Respectfully submitted,

BAKER BOTTS L.L.P.

Dated: December 13, 2005

By: s/ John W. Porter

John W. Porter
Attorney of Record

BAKER BOTTS, L.L.P.
3000 One Shell Plaza
910 Louisiana
Houston, Texas 77002
(713) 229-1597
(713) 229-1522 (FAX)

Stephanie Loomis-Price (Of Counsel)
J. Graham Kenney (Of Counsel)

ATTORNEYS FOR PLAINTIFFS-COUNTERDEFENDANTS
DAVID S. LITMAN, MALIA A. LITMAN,
ROBERT B. DIENER, and
MICHELLE S. DIENER