# EXHIBIT B

**BAKER BOTTS** L.L.P.

ONE SHELL PLAZA
910 LOUISIANA
HOUSTON, TEXAS
77002-4995
713.229.1234
FAX 713.229.1522

AUSTIN
BAKU
DALLAS
**HOUSTON**
LONDON
MOSCOW
NEW YORK
RIYADH
WASHINGTON

June 9, 2004

075560.0101

John W. Porter
713.229.1597
FAX 713.229.2797
john.porter@bakerbotts.com

BY HAND DELIVERY

Ms. Susan Weiss
Department of the Treasury - Internal Revenue Service
4050 Alpha Road
Farmers Branch, TX 75244

Re: 2000 Form 1040 for David S. Litman and Malia A. Litman

Dear Ms. Weiss:

This letter serves as a response to your Information Document Request dated April 6, 2004, to David and Malia Litman (the "Taxpayers"). Your request, and the Taxpayers' responses, are as follows:

**1. A complete copy of your Federal income tax return for tax years 1999, 2001 and 2002.**

*Response*: Copies of these documents are enclosed behind Tab 1 (labeled L 00001 - 179).

**2. An explanation of the transaction(s) that generated the capital gains reported on line 12 of Schedule D in the amount of $49,816,356.**

*Response*: In May of 1999, all of the assets of TMF, Inc, a Subchapter S corporation in which the Taxpayers owned a fifty percent interest, were sold to USA Network (the "1999 Contract"). A copy of the 1999 Contract is attached behind Tab 2 and is incorporated by reference (labeled L 00180 - 566). During 1999, TMF, Inc. was liquidated and its assets (including, without limitation, the sales proceeds and other rights under the 1999 Contract) and its liabilities were transferred to a liquidating trust ("TMF Liquidating Trust") in which the Taxpayers owned a fifty percent interest.

In February 2000, the 1999 Contract was amended (the "2000 Amendment"). A copy of the 2000 Amendment is attached behind Tab 3 and is incorporated by reference (labeled L 00567 - 929). As a part of the 2000 Amendment, the sellers received the rights to additional equity interests in the anticipated initial public offering of Hotel Reservations Network ("HRN"). The shares received by TMF Liquidating Trust in the transaction were subject to onerous resale restrictions. These resale restrictions included, among other things, contractual holding periods (the vast majority of the stock was subject to a four-year contractual holding period), SEC Rule

144 volume restrictions on the number of shares that could be sold after holding periods expired, the requirement that approval of HRN's parent company be obtained before any stock could be sold, and the practical market restriction on resale due to the fact that TMF Liquidating Trust was owned by the CEO and President of HRN. The contractual resale restrictions are set forth in detail in the 2000 Amendment.

The 2000 Amendment resulted in the capital gains reflected on Line 12 of Schedule D of the Taxpayers' U.S. Individual Income Tax Return, Form 1040, for 2000. The fair market value of the shares used to determine the consideration received by TMF Liquidating Trust and the capital gains taxes paid by the Taxpayers from the transaction was based upon an independent appraisal of the shares prepared by Business Valuation Services, Inc. ("BVS"). A copy of the BVS valuation report is attached behind Tab 4 (labeled L 00930 - 983). In addition, the Taxpayers obtained a second independent appraisal of the shares. The second appraiser concluded that the fair market value of the shares received was actually lower than the value of the shares determined by BVS. Using the conservative approach, the Taxpayers reported the consideration received at the higher value set forth in the BVS appraisal.

**3. A schedule, by tax year, of your portion of the gross proceeds received from the sale of assets and/or liquidation of the stock of TMF, Inc. and HRN Marketing Corporation. Our records indicate that as of 12/31/2000 a total purchase price of $406 million had been paid in connection with this transaction. Please provide a detailed schedule indicating your allocable portion of the $406 million figure, the computation of your gain from the transaction and how these gains were reported on tax returns through 12/31/2000.**

*Response*: The total value of the consideration received by TMF Liquidating Trust under the 1999 Contract and under the 2000 Amendment during years 1999, 2000, and 2001 was $291,422,137, not $406 million as you state your records indicate. In addition, only fifty percent of the $291,422,137 proceeds was allocable to the Taxpayers because the Taxpayers owned a fifty percent interest in TMF Liquidating Trust. The Taxpayers reported and paid taxes on their allocable portion of the $291,422,137 proceeds in their 1999, 2000, and 2001 U.S. Individual Income Tax Return, Forms 1040. The Taxpayers paid taxes of $18,082,647, $9,749,859, and $2,096,693 for those years, respectively. A schedule showing the Taxpayers computation of the consideration received from the transactions by TMF Liquidating Trust is attached behind Tab 5 (labeled L 00984). Schedules showing how the gains from these transactions were reported on tax returns through December 31, 2000 are attached behind Tab 6 (labeled L 00985 - 987).

While you have not told us the $406 million number contained in your records was computed, it appears to be based upon the $16 per share initial public offering price for the HRN stock. The shares received by TMF Liquidating Trust in 2000 were worth substantially less than the $16 per share IPO price of the stock. The initial public offering price of the stock is, of course, the price at which the stock was initially introduced to the public market on a freely traded basis. But as you can see from the 2000 Amendment, the 9,999,900 shares of stock received by TMF Liquidating Trust in the 2000 Amendment were not freely tradable when received. As noted in response to question number 2, the stock was subject to onerous resale

restrictions. As demonstrated in the BVS appraisal, restrictions on resale such as these have a significant negative impact on the value of the shares received in the 2000 Amendment, reducing the value of the shares substantially below the freely tradable $16 initial public offering price of the stock.

I hope this has answered any questions that you have regarding Mr. and Mrs. Litman's 2000 tax returns. If you require additional information, please let me know.

Very truly yours,

John W. Porter

JWP:3765
Enclosures
cc: Mr. David S. Litman
Ms. Malia A. Litman